## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MARTIN J. WALSH**, Secretary of Labor, | ) | |
| United States Department of Labor, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| **DAVID FENSLER; JOHN FERNANDEZ;** | ) | |
| **GARY MEYERS; L. STEVEN PLATT;** | ) | |
| **HERBERT O. MCDOWELL III;** | ) | |
| **DAVID SCHWALB; ROBBINS, SALOMON** | ) | |
| **& PATT, LTD.; ROBBINS DIMONTE, LTD.;** | ) | |
| **UNITED PREFERRED COMPANIES, LTD.;** | ) | |
| and the **UNITED EMPLOYEE BENEFIT** | ) | |
| **FUND TRUST;** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

**MARTIN J. WALSH**, Secretary of Labor, United States Department of Labor

("Secretary"), alleges:

1.      The Secretary is charged with enforcing the provisions of Title I of the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*,

which establishes, among other things, standards of conduct, responsibility, and obligations for

fiduciaries of employee benefit plans.

2.      ERISA ensures "the soundness and stability of plans with respect to adequate

funds to pay promised benefits." ERISA § 2(a), 29 U.S.C. § 1001(a). To protect plan

investments, ERISA requires that those who manage the investments act solely, exclusively, and

prudently in the interests of plan participants. ERISA § 404(a)(1)(A) and (B), 29 U.S.C.

§ 1104(a)(1)(A) and (B).

3.     ERISA § 406(b) prohibits fiduciaries from using plan assets for their own benefit. 29 U.S.C. § 1106(b). In addition, ERISA § 406(a) prohibits fiduciaries from using plan assets in a transaction with or for the benefit of "parties in interest," as defined in ERISA § 3(14), 29 U.S.C. § 1002(14), unless those transactions meet the strict requirements of statutory, class, or individual exemptions. 29 U.S.C. § 1106(a); ERISA § 408, 29 U.S.C. § 1108.

4.     When ERISA's strict fiduciary standards are not met, the Secretary has the authority to seek relief under ERISA §§ 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109 and 1132(a)(2) and (5), to restore plan losses, to recover unjust profits, and to obtain other remedial and equitable relief. The Secretary may also seek to enjoin a breaching fiduciary from acting as a fiduciary or service provider to employee benefit plans in the future.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

6.     The United Employee Benefit Fund Trust ("UEBF" or "Fund") provides death benefits to employees of participating employers.

7.     Venue is appropriate in the Northern District of Illinois, Eastern Division, pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Fund is administered in Northfield, Cook County, Illinois, within this district. In addition, the alleged breaches took place within this district.

## GENERAL ALLEGATIONS

8.     Defendants John Fernandez, David Fensler, Gary Meyers, and Herbert O. McDowell III operated a multiple employer welfare arrangement ("MEWA") to provide life insurance benefits to employer-sponsored ERISA-covered employee benefit plans. As set forth

more fully below, the defendants listed in this paragraph were fiduciaries with control over the plan assets and management of at least sixty-three ERISA-covered plans participating in the MEWA ("Participating Plans").

9. The Fund was established on December 1, 1991, pursuant to an Agreement between the Office and Professional Workers Division of 2411, which was a local of the Chicago and Central States Joint Board of the Amalgamated Clothing and Textile Workers Union ("Local 2411"), and the Professional Workers Master Contract Group ("Master Contract Group") ("Agreement").

10. According to the United Employee Benefit Fund Trust Agreement ("Trust Agreement"), the Fund holds itself out as a voluntary employees' beneficiary association ("VEBA") trust under a collectively bargained, multi-employer plan co-sponsored by Local 2411 and the Master Contract Group.

11. In 2000, the National Production Workers Union Local 707 ("Local 707") joined the Agreement. At some point after the year 2000, Local 707 succeeded Local 2411 as the Fund's only purported union sponsor.

12. The Fund actually operates as a non-ERISA covered MEWA. Participating employers are located in multiple states across the country and come from a wide range of industries. There is no evidence of common control among the participating employers, nor any cohesive bond. Participating employers are heterogeneous and unrelated, with the only common purpose being a shared desire for life insurance coverage through the Fund.

13. Although the Fund itself is not an ERISA-covered plan, employers sponsor Participating Plans that comprise the Fund, each of which is covered by ERISA and imposes fiduciary responsibilities on the Defendants.

14. The Participating Plans obtained death benefits for participating employees through their participation in the Fund.

15. The Participating Plans were created through the completion of the Fund's enrollment forms, which consisted of the "Master Contract Group Bargaining Association Application and Authorization," the "Recognition Agreement, Local 707, National Production Workers Union," the "Addendum to the Master Contract between the National Production Workers Union, Local 707 and the Master Contract Group Bargaining Association," "DBO Exhibit I" (describing the participating employer's formula for determining death benefits), and life insurance policy applications.

16. The Participating Plans were created with the intent to provide death benefits and have an identifiable class of beneficiaries, a source of financing, and procedures for obtaining the benefits. When participating employers transferred employer contributions to the Fund on behalf of the Participating Plans, it was the employers' intent that these contributions be used to pay for claims and necessary administrative expenses.

17. Through the facts described in paragraphs 10 through 16 above, each participating employer established or maintained an employee welfare benefit plan as defined in ERISA § 3(1), 29 U.S.C. § 1002(1), which was also an employee benefit plan as defined in ERISA § 3(3), 29 U.S.C. § 1002(3). Each individual employee welfare benefit plan is covered by ERISA pursuant to ERISA section 4(a), 29 U.S.C. § 1003(a).

18. The Fund is a MEWA within the meaning of ERISA § 3(40), 29 U.S.C. § 1002(40), holding and administering the assets of one or more employee welfare benefit plans within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

19.     The Fund's Trust Agreement and summary plan description state the Fund provides death benefits paid from employer contributions.

20.     United Financial Group ("UFG") initially marketed the Fund to employers and insurance agents to recruit new participating employers. UFG was paid commissions from the life insurance carriers who wrote the life insurance policies for the Fund.

21.     In or about 2014, Defendant United Preferred Companies, Ltd. ("UPC" or "United") replaced UFG and marketed the Fund to employers and insurance agents to recruit new participating employers. UPC was also paid commissions from the life insurance carriers who wrote the life insurance policies for the Fund.

22.     No new participating employers have joined the Fund since 2014.

23.     As of December 31, 2018, the Fund reported in its Form 5500 Annual Return/Report of Employee Benefit Plan ("Form 5500") that it had 138 participants and $21,997,890 in assets.

## PARTIES

24.     Defendant United Employee Benefit Fund Trust is the MEWA that currently provides benefits and holds assets for at least sixty-three ERISA-covered Participating Plans. The Fund's office is located at One Northfield Plaza, Suite 100, Northfield, Illinois 60093.

25.     The Fund is named as a defendant herein pursuant to Federal Rule of Civil Procedure 19(a) solely to assure that complete relief can be granted.

26.     From August 14, 2012, to at least September 30, 2018, Defendant John Fernandez, also known as Juan Fernandez ("Trustee Fernandez"), was an employee of Local 707 and a Trustee of the Fund selected by Local 707 ("Employee Trustee"). As Employee Trustee, Trustee Fernandez exercised authority or control respecting management or disposition of the

5

assets of the Participating Plans covered by the Fund, exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the Fund and the Fund itself, and had discretionary authority or discretionary responsibility in the administration of the Participating Plans covered by the Fund and the Fund itself, and thus, was a fiduciary of the Participating Plans pursuant to ERISA § 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii), and a party in interest pursuant to ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14)(A) and (H). According to the Fund's Trust Agreement, the Employee Trustee is also a named fiduciary pursuant to ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2). The Fund's Trust Agreement also requires the Employee Trustee to manage the Fund and approve payments from the Fund.

27.     From July 1, 2016, to at least September 30, 2018, Defendant Gary Meyers ("Trustee Meyers") was a Trustee of the Fund appointed by the Master Contract Group ("Employer Trustee"). As Employer Trustee, Trustee Meyers exercised authority or control respecting management or disposition of the assets of the Participating Plans covered by the Fund, exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the Fund and the Fund itself, and had discretionary authority or discretionary responsibility in the administration of the Participating Plans covered by the Fund and the Fund itself, and thus, was a fiduciary of the Participating Plans pursuant to ERISA § 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii), and a party in interest pursuant to ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A). According to the Fund's Trust Agreement, the Employer Trustee is also a named fiduciary pursuant to ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2). The Fund's Trust Agreement also requires the Employer Trustee to manage the Fund and approve payments from the Fund.

28.     From April 28, 2015, to at least September 30, 2018, Defendant David Fensler ("Fensler") served as Fund Manager, had discretionary authority or discretionary responsibility in the administration of the Participating Plans covered by the Fund and the Fund itself, including the authority to disburse payments from the Fund under the direction of the Trustees, and thus, was a fiduciary of the Participating Plans pursuant ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), and a party in interest pursuant to ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A). At certain times described herein, Fensler exercised authority or control respecting management or disposition of the assets of the Participating Plans covered by the Fund and exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the Fund and the Fund itself, and thus, was also a fiduciary of the Participating Plans pursuant ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

29.     From April 28, 2015, to at least September 30, 2017, Defendant Herbert O. McDowell III ("McDowell") exercised authority or control respecting management or disposition of the assets of the Participating Plans covered by the Fund and exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the Fund and the Fund itself, and thus was a fiduciary of the Participating Plans pursuant ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and a party in interest pursuant to ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

30.     From April 28, 2015, to at least October 27, 2016, McDowell was an Employer Trustee of the Fund. As Employer Trustee, McDowell exercised authority or control respecting management or disposition of the assets of the Participating Plans covered by the Fund, exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the Fund and the Fund itself, and had discretionary authority or

discretionary responsibility in the administration of the Participating Plans covered by the Fund and the Fund itself, and thus, was a fiduciary of the Participating Plans pursuant to ERISA § 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii), and a party in interest pursuant to ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), and a named fiduciary pursuant to ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2).

31.     Defendant UPC is an Illinois corporation formed on or about September 7, 2011. From September 7, 2011, to at least September 31, 2018, UPC was solely owned and operated by McDowell. From at least November 13, 2015, to least September 30, 2017, UPC was a service provider to the Fund. As a service provider to the Fund solely owned by McDowell, UPC was a party in interest pursuant to ERISA § 3(14)(B) and (G), 29 U.S.C. § 1002(14)(B) and (G). UPC's office is located at One Northfield Plaza, Suite 100, Northfield, Illinois 60093, which is the same address as the Fund's office. As the sole owner of service provider UPC from at least November 13, 2015, to least September 30, 2017, McDowell was also a party in interest to the Fund and the Participating Plans pursuant to ERISA § 3(14)(B) and (H), 29 U.S.C. § 1002(14)(B) and (H).

32.     McDowell is liable for all claims alleged herein as to UPC, as UPC is McDowell's alter ego. To the extent McDowell acted as a fiduciary using UPC's corporate form, UPC is also a fiduciary.

33.     From at least May 28, 2015, to at least May 31, 2020, Defendant L. Steven Platt ("Platt") served as the Fund's Counsel. As a service provider to the Fund, Platt was a party in interest pursuant to ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H). At certain times described herein, Platt exercised authority and control respecting management or disposition of the assets of the Participating Plans covered by the Fund and exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the Fund and

the Fund itself, and thus was a fiduciary of the Participating Plans pursuant ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) and a party in interest pursuant to ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

34.     Defendant David Schwalb ("Schwalb") is a Chicago-area real estate attorney who conducted transactions with the Fund in November 2016 and December 2017 through the following entities he owns and manages: Mount Rinderhorn Capital, LLC ("Mount Rinderhorn"), a Delaware limited liability company, and Husker Properties, LLC ("Husker Properties"), an Illinois limited liability company.

35.     Defendant Robbins, Salomon & Patt, Ltd. ("RSP") is an Illinois corporation formed on or about May 29, 1985. From at least May 28, 2015, to May 31, 2020, RSP employed Platt.

36.     All of Platt's actions with respect to the Fund described herein were undertaken while he was acting in the course and scope of his employment with RSP.

37.     RSP is liable for all claims alleged herein as to Platt under the doctrine of respondeat superior.

38.     Defendant Robbins DiMonte, Ltd. ("Robbins DiMonte") is an Illinois corporation formed on or about January 11, 2022, as a result of a merger of RSP and law firm DiMonte & Lizak, LLC ("DiMonte & Lizak").

39.     Because of the merger between RSP and DiMonte & Lizak, Robbins DiMonte is liable for the claims alleged herein as to Platt to the same extent RSP is liable under the doctrine of respondeat superior. In the alternative, Robbins DiMonte is liable for the claims alleged herein as to Platt to the same extent RSP is liable (under the doctrine of respondeat superior) as a

successor-in-interest to RSP because Robbins DiMonte had notice of RSP's potential liability and there is a continuity of business operations between RSP and Robbins DiMonte.

<p align="center">COUNT ONE<br>
**Paying $44,440.42 in Fund Assets to McDowell's Son<br>
Because of a Dispute with a Third Party about Life Insurance Commissions**</p>

40.     Paragraphs 1 through 39 above are incorporated herein by reference.

41.     UFG was the Fund's broker of record for the Fund since October 11, 1996, and obtained death benefit only ("DBO") insurance policies on behalf of the Fund.

42.     UFG's agreement with the Fund stated UFG would not seek compensation for commissions from the Fund.

43.     As of approximately January 2015, UPC was the successor to UFG in its role obtaining DBO policies for the Fund.

44.     On January 5, 2015, Stan A. Kinoshita and Associates ("Kinoshita") and UPC entered into a settlement agreement concerning a dispute over commissions for life insurance policies relating to the Fund that were written and paid for through Penn Mutual Life Insurance Company during 2014 and 2015.

45.     On March 4, 2015, McDowell requested a $42,456 reimbursement from the Fund to compensate him for commissions he was not able to obtain from Kinoshita in the settlement agreement with UPC.

46.     On the same date, Trustee Fernandez and Fensler, who was the Employer Trustee at the time (prior to becoming Fund Manager), denied McDowell's request after determining the Fund had no legal basis to pay McDowell commissions.

47.     On May 28, 2015, McDowell appointed himself Employer Trustee, replacing Fensler as the designated Employer Trustee to the Fund, and fired the Fund's previous attorney, replacing him with Platt.

48.     Peter R. McDowell, Defendant Herbert McDowell's son, is the sole owner and president of PRM Financial Group, Inc. ("PRM"), an Illinois corporation that shares office space with the Fund and UPC. As the son of McDowell, who was Employer Trustee at the time, Peter R. McDowell was a party in interest pursuant to ERISA § 3(14)(F), 29 U.S.C. § 1002(14)(F).

49.     UPC received some of its life insurance commissions through PRM because PRM has a life insurance license and UPC does not.

50.     On May 28, 2015, Trustee Fernandez and McDowell approved the Fund's payment of $42,000 to PRM Financial Group for the commissions McDowell claimed he was owed. Trustee Fernandez knew or should have known PRM Financial Group was owned by McDowell's son, who was a party in interest.

51.     On May 29, 2015, McDowell signed a check from the Fund for $42,000 to PRM Financial Group; the check's memo line stated, "Settlement Agreement 5-28-2015."

52.     On October 15, 2015, McDowell requested Platt make a recommendation to the Fund Trustees (at the time, McDowell was the Fund's Employer Trustee) regarding the ability of the Fund to pay an additional $2,440.42 to McDowell that he claimed the Fund owed to PRM as a result of another dispute over commissions with Kinoshita.

53.     On October 20, 2015, McDowell signed a check from the Fund for $2,440.42 to PRM Financial Group. According to the Fund Trustees' practice of approving payments from the Fund and the requirements of the Fund's Trust Agreement, the $2,440.42 payment from the Fund to PRM Financial Group should not have occurred without Trustee Fernandez's approval.

Trustee Fernandez failed to prevent this transaction from occurring and failed to take any action to reverse this transaction.

54.     By the allegations described in paragraphs 40 through 53 above, McDowell:

      a.     failed to ensure all Fund assets were held in trust in violation of ERISA § 403(a), 29 U.S.C. § 1103(a);

      b.     failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

      c.     caused the Fund to engage in a transaction they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, McDowell and/or his son Peter R. McDowell, parties in interest, of assets of the Fund in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

      d.     dealt with assets of the Fund in his own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

      e.     acted on behalf of a party, Peter R. McDowell, whose interests are adverse to the interests of the Fund or the interests of its participants and beneficiaries in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

55.     By the allegations described in paragraphs 40 through 53 above, Trustee Fernandez:

      a.     failed to ensure all Fund assets were held in trust in violation of ERISA § 403(a), 29 U.S.C. § 1103(a);

      b.      failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

      c.      caused the Fund to engage in a transaction he knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, McDowell and/or his son Peter R. McDowell, parties in interest, of assets of the Fund in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

56.     As a result of the foregoing breaches of duty described in paragraphs 54 and 55 above, McDowell and Trustee Fernandez caused losses to the ERISA-covered employee benefit plans participating in the Fund, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

57.     Pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), Trustee Fernandez is liable for the breaches of his co-fiduciary as described in paragraphs 40 through 53 above because he enabled his co-fiduciary to commit a breach by breaching his own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

<div align="center">COUNT TWO<br>
<strong>Loaning $5,000 to McDowell While He Was a Fund Trustee</strong></div>

58.     Paragraphs 1 through 39 above are incorporated herein by reference.

59.     On August 7, 2015, during a Trustee meeting Platt and Fensler attended, Trustee Fernandez approved a $5,000 loan from the Fund to McDowell, who was the Fund's Employer Trustee at the time.

60.     McDowell requested Fensler issue him a check from the Fund. The Fund's Trust Agreement required Fensler, as Fund Manager, to among other things, maintain all books and

records of the Fund's Trust and perform other functions necessary or appropriate to the operation of the Fund's Trust.

61.     Platt, who knew about McDowell's request for a $5,000 loan from the Fund, directed Fensler to issue McDowell a check from the Fund, and Fensler, as Fund Manager, provided a blank check to McDowell.

62.     On August 7, 2015, McDowell signed a check from the Fund to "Herbert O. McDowell III" for $5,000. The check's memo line stated, "Loan per Steven Platt."

63.     On August 10, 2015, McDowell endorsed the check for $5,000 and deposited it into UPC's bank account.

64.     As of January 25, 2017, McDowell's "loan" had not been repaid. Upon information and belief, McDowell's "loan" was never repaid. Fensler and Trustee Fernandez breached their fiduciary duties to the Fund by failing to take any actions to ensure the $5,000 "loaned" to McDowell was restored to the Fund.

65.     By the allegations described in paragraphs 58 through 64 above, McDowell dealt with assets of the Fund in his own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

66.     By the allegations described in paragraphs 58 through 64 above, McDowell and Trustee Fernandez:

        a.     failed to ensure all Fund assets were held in trust in violation of ERISA § 403(a), 29 U.S.C. § 1103(a);

        b.     failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and their

14

beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA §
404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

      c.     failed to discharge their duties with respect to the Plan in accordance with
the documents and instruments governing the Fund resulting in a violation of ERISA §
404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D);

      d.     caused the Fund to engage in a transaction they knew or should have
known constituted a direct or indirect lending of money or other extension of credit between the
Fund and himself, a party in interest in violation of ERISA § 406(a)(1)(B), 29 U.S.C. §
1106(a)(1)(B); and

      e.     acted on behalf of McDowell, a party whose interests are adverse to the
interests of the Fund or the interests of its participants and beneficiaries in violation of ERISA §
406(b)(2), 29 U.S.C. § 1106(b)(2).

67.     By the allegations described in paragraphs 58 through 64 above, Fensler failed to
act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive
purpose of providing benefits to participants and their beneficiaries and defraying reasonable
expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. §
1104(a)(1)(A).

68.     As a result of the foregoing breaches of duty described in paragraphs 65 through
66 above, Trustee Fernandez and McDowell caused losses to the ERISA-covered employee
benefit plans participating in the Fund, for which the Participating Plans are entitled to equitable
relief. ERISA § 409, 29 U.S.C. § 1109.

69.     Pursuant to ERISA § 405(a)(2) and (3), 29 U.S.C. § 1105(a)(2) and (3), Fensler is
liable for the breaches of his co-fiduciaries as described in paragraphs 58 through 64 above

15

because he enabled his co-fiduciaries to commit a breach by breaching his own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1), and he had knowledge of the fiduciary breach by his co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

70.     As a result of the conduct described in paragraphs 58 through 61 above, Platt knowingly participated in the breaches of fiduciary duty described in paragraphs 65 through 66 above, is subject to such appropriate equitable relief to redress the violations in which he knowingly participated, and is liable thereby pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

<div align="center">COUNT THREE</div>
**<div align="center">Transferring $100,000 in Fund Assets to McDowell's Foreclosure Attorney</div>**

71.     Paragraphs 1 through 39 above are incorporated herein by reference.

72.     Attorney Matthew E. Gurvey ("Gurvey") of the Law Offices of Matthew E. Gurvey, P.C. ("Law Offices of Matthew E. Gurvey"), represented McDowell in foreclosure proceedings instituted by Heartland Bank and Trust Company ("Heartland Bank") involving McDowell's personal residence in Wilmette, Illinois (the "McDowell Residence").

73.     Gurvey never provided any services to the Fund.

74.     On August 23, 2016, Platt informed McDowell that Gurvey, who Platt knew was McDowell's foreclosure attorney and not a service provider to the Fund, requested McDowell wire money from the Fund to the Law Offices of Matthew E. Gurvey's Interest on Lawyer Trust Account ("IOLTA") account ("Gurvey IOLTA account"). Platt instructed McDowell to transfer the money to the Gurvey IOLTA account.

75.     On August 24, 2016, Fensler transferred $100,000 from a UEBF bank account to the Gurvey IOLTA account via a wire transfer. Fensler, as the Fund Manager required by the Fund's Trust Agreement to maintain all books and records of the Fund's Trust and perform other

functions necessary or appropriate to the operation of the Fund's Trust, knew or should have known Gurvey was not a service provider to the Fund.

76.     According to the Fund Trustees' practice of approving payments from the Fund and the requirements of the Fund's Trust Agreement, the $100,000 transfer from a UEBF bank account to the Gurvey IOLTA account should not have occurred without Trustee Fernandez's approval. Trustee Fernandez failed to prevent this transaction from occurring and failed to take any action to reverse this transaction.

77.     By the allegations described in paragraphs 73 and 75 above, Fensler:

        a.      caused the Fund to engage in a transaction he knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of McDowell, a party in interest, of assets of the Fund in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

        b.      acted on behalf of McDowell, a party whose interests are adverse to the interests of the Fund or the interests of its participants and beneficiaries in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

78.     By the allegations described in paragraphs 71 through 76 above, McDowell dealt with assets of the Fund in his own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

79.      By the allegations described in paragraphs 71 through 76 above, Fensler, Trustee Fernandez, and McDowell:

        a.      failed to ensure all Fund assets were held in trust in violation of ERISA § 403(a), 29 U.S.C. § 1103(a); and

17

b.　　　failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

80.　　As a result of the foregoing breaches of duty described in paragraphs 77 through 79 above, Fensler and McDowell caused losses to the ERISA-covered employee benefit plans participating in the Fund, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

81.　　Pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), Trustee Fernandez is liable for the breaches of his co-fiduciaries as described in paragraphs 71 through 76 above because he enabled his co-fiduciaries to commit a breach by breaching his own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1).

82.　　As a result of the conduct described in paragraph 74 above, Platt knowingly participated in the breaches of fiduciary duty described in paragraphs 77 through 79 above, is subject to such appropriate equitable relief to redress the violations in which he knowingly participated, and is liable thereby pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

<u>COUNT FOUR</u>
**Transferring $50,000 in Fund Assets to McDowell's Foreclosure Attorney**

83.　　Paragraphs 1 through 39 above are incorporated herein by reference.

84.　　McDowell and his wife, Julie A. McDowell, a party interest pursuant to ERISA § 3(14)(F), 29 U.S.C. § 1003(3)(14)(F), were evicted from the McDowell Residence on November 8, 2016. Their personal property remained locked at the McDowell Residence after the eviction.

85.　　On or before November 2, 2016, Platt caused an IOLTA to be established at PNC Bank through RSP in order to hold Fund assets (the "RSP IOLTA account"); Trustees Fernandez

and Meyers intended for the RSP IOLTA to hold Fund assets for the benefit of the Fund. Pursuant to RSP's policy and Platt's typical practice, Platt had to authorize all transfers out of the RSP IOLTA account.

86.     On December 1, 2016, Gurvey emailed McDowell, telling McDowell to "[g]et the $50,000 from Steve [Platt] and have it transferred into son's [sic] account and have him issue a $50,000 cashier's check" in order to "avoid questions about the trust." McDowell forwarded this email to Platt on the same date.

87.     On December 12, 2016, Gurvey transferred $50,000 from the Gurvey IOLTA account to Heartland Bank, on behalf of McDowell, in order to obtain a release of Heartland Bank's lien on the McDowells' personal property.

88.     On January 13, 2017, McDowell contacted Terry DeMunster ("DeMunster") in RSP's accounting department requesting $50,000 from the RSP IOLTA account and gave DeMunster the wire transfer information to transfer money to the Gurvey IOLTA account.

89.     On the same day, Platt gave DeMunster approval to transfer $50,000 in Fund assets from the RSP IOLTA account to the Gurvey IOLTA account. Pursuant to RSP's policy and Platt's typical practice, Platt had to authorize all transfers out of the RSP IOLTA account. The transfer would not have occurred without Platt's approval.

90.     Trustee Fernandez and Trustee Meyers approved the $50,000 transfer of Fund assets from the RSP IOLTA account to the Gurvey IOLTA account.

91.     By the allegations described in paragraphs 83 through 90 above, McDowell dealt with assets of the Fund in his own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

92.     By the allegations described in paragraphs 83 through 90 above, Trustee Fernandez, Trustee Meyers, and McDowell:

a.      failed to ensure all Fund assets were held in trust in violation of ERISA § 403(a), 29 U.S.C. § 1103(a);

b.      failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

c.      caused the Fund to engage in a transaction they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of McDowell, a party in interest, of assets of the Fund in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

d.      acted on behalf of McDowell, a party whose interests are adverse to the interests of the Fund or the interests of its participants and beneficiaries in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

93.     As a result of the foregoing breaches of duty described in paragraphs 91 and 92 above, Trustee Fernandez, Trustee Meyers, and McDowell caused losses to the ERISA-covered employee benefit plans participating in the UEBF, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

94.     As a result of the conduct described in paragraphs 85 through 86 and 89 above, Platt knowingly participated in the breaches of fiduciary duty described in paragraphs 91 and 92 above, is subject to such appropriate equitable relief to redress the violations in which he

knowingly participated, and is liable thereby pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

<u>COUNT FIVE</u>
**Transferring $250,000 in Fund Assets to McDowell's Foreclosure Attorney**

95.     Paragraphs 1 through 39 and 85 above are incorporated herein by reference.

96.     On January 24, 2017, McDowell emailed RSP's DeMunster, instructing her to transfer $250,000 from the RSP IOLTA account to the Gurvey IOLTA account; Platt was copied on the email.

97.     On January 25, 2017, the Gurvey IOLTA account received a wire transfer of $250,000 from the RSP IOLTA account.

98.     According to the Fund Trustees' practice of approving payments from the Fund and the requirements of the Fund's Trust Agreement, the $250,000 transfer from the RSP IOLTA account to the Gurvey IOLTA account should not have occurred unless Trustee Fernandez and Trustee Meyers both approved the transfer. Trustee Fernandez and Trustee Meyers failed to prevent this transaction from occurring and failed to take any action to reverse this transaction.

99.     On January 25, 2017, the Law Offices of Matthew E. Gurvey issued a cashier's check for $175,000 to Heartland Bank. The check's memo line stated, "McDowell Settlement."

100.    On January 30, 2017, the Gurvey IOLTA account issued a check for $25,000 to McDowell.

101.    On February 16, 2017, the Gurvey IOLTA account issued a check for $10,000 to McDowell.

102.    Trustee Fernandez and Trustee Meyers knew or should have known Gurvey never provided any services to the Fund.

103.    By the allegations described in paragraphs 95 through 101 above, McDowell:

a.       failed to ensure all Fund assets were held in trust in violation of ERISA §

403(a), 29 U.S.C. § 1103(a);

b.       failed to act solely in the interest of the participants and beneficiaries of

the Fund and for the exclusive purpose of providing benefits to participants and their

beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA §

404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

c.       caused the Fund to engage in a transaction he knew or should have known

constituted a direct or indirect transfer to, or use by or for the benefit of, himself, a party in

interest, of assets of the Fund in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

d.       dealt with assets of the Fund in his own interest in violation of ERISA §

406(b)(1), 29 U.S.C. § 1106(b)(1); and

e.       acted on behalf of himself, a party whose interests are adverse to the

interests of the Fund or the interests of its participants and beneficiaries in violation of ERISA §

406(b)(2), 29 U.S.C. § 1106(b)(2).

104.    By the allegations described in paragraphs 95 through 102 above, Trustee

Fernandez and Trustee Meyers failed to act solely in the interest of the participants and

beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and

their beneficiaries and defraying reasonable expenses of Fund administration in violation of

ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

105.    As a result of the foregoing breaches of duty described in paragraph 103 above,

McDowell caused losses to the ERISA-covered employee benefit plans participating in the

UEBF, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C.

§ 1109.

106.     Pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), Trustee Fernandez and

Trustee Meyers are liable for the breaches of their co-fiduciary McDowell as described in

paragraphs 95 through 101 above because they enabled their co-fiduciary McDowell to commit a

breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1).

<div align="center">

COUNT SIX
**Transferring $1.125 Million in Fund Assets to
Purchase McDowell's Personal Residence Out of Foreclosure[1]**

</div>

107.     Paragraphs 1 through 39 and 84 through 85 above are incorporated herein by

reference.

108.     As early as August 23, 2016, Trustee Fernandez, Trustee Meyers, and Platt were

aware of the foreclosure proceedings regarding the McDowell Residence and McDowell's need

for funds related to his foreclosure proceedings.

109.     In a letter signed by Trustee Fernandez and Trustee Meyers dated August 23,

2016, and sent to Heartland Bank, the bank foreclosing on the McDowell Residence, Platt

informed Heartland Bank that the Fund Trustees "approved a $500,000 loan to Herb McDowell

for real estate with a $100,000 down payment today and the additional $400,000 to be paid by

the end of September."

110.     Mount Rinderhorn is a Delaware limited liability company established on June 1,

2015, and solely owned by David Schwalb.

111.     Husker Properties is an Illinois limited liability company established on

November 7, 2016; Schwalb owns 95% of Husker Properties and his wife owns the remaining

5%. Schwalb created Husker Properties to purchase the McDowell Residence.

---

[1] The Fund has provided information that $1,125,000 in principal losses related to these violations has
been restored to the Fund; the Secretary is in the process of verifying that information. In the event the
principal losses have been restored to the Fund, the Secretary still seeks full lost opportunity costs for the
period the Fund incurred these losses, as well as injunctive relief.

112.    At some point prior to August 24, 2016, Schwalb designed the transactions resulting in Husker Properties' purchase of the McDowell Residence in consultation with Platt. This occurred after Platt contacted Schwalb and informed him that the Fund determined it could not loan money directly to McDowell.

113.    The transactions resulting in Husker Properties' purchase of the McDowell Residence were designed by Schwalb in consultation with Platt in order to minimize or prevent the appearance of McDowell's involvement in the transactions.

114.    Schwalb and Platt knew the purpose of the transactions resulting in Husker Properties' purchase of the McDowell Residence was to allow McDowell and his wife to continue living in the McDowell residence.

115.    Platt recommended to the Fund's Trustees establishing the RSP IOLTA for the Fund in order to fund the transactions resulting in Husker Properties' purchase of the McDowell Residence.

116.    On August 24, 2016, Platt explained to Fensler that the planned transactions resulting in Husker Properties' purchase of the McDowell Residence were in order "[t]o complete the loan to Herb correctly without it being a reportable party in interest and prohibited transaction," which resulted in having "to jump through a number of hoops" described by Platt as including:

    a.    McDowell resigning as Trustee;

    b.    Having Fensler deduct McDowell's loan repayments directly from McDowell's monthly consulting fee;

c.    "Set[ting] up a subsidiary of the Trust fund to lend the money – it will be a partnership with David Schwalb and Schwalb Realty who has no ties to the Fund or Herb [McDowell]"; and

d.    Obtaining an opinion letter from a Qualified Plan Asset Manager "who has already looked at this transaction who is going to say that he looked at it and that he thinks the investment as structured is prudent and in accord with ERISA and that it is not in his opinion a prohibited party in interest transaction."

117.    From September to December 2016, Trustee Meyers, Trustee Fernandez, McDowell, and Fensler caused the Fund to terminate several whole life insurance policies owned by the Fund to obtain the cash surrender values on those policies.

118.    On January 13, 2017, Fensler and McDowell applied, on behalf of the Fund, for a $325,000 loan on a Fund participant's life insurance policy.

119.    Between November 2, 2016, and January 27, 2017, McDowell and Fensler endorsed the checks made payable from the insurance carriers to the Fund for the loan taken and the cash surrender values of various UEBF participants' life insurance policies described in paragraphs 117 and 118 above and caused these checks issued to the Fund to be deposited into the RSP IOLTA account for the transactions resulting in Husker Properties' purchase of the McDowell Residence.

120.    Between November 2, 2016, and January 27, 2017, Fensler deposited fourteen checks issued to the Fund into the RSP IOLTA account worth $1,593,154.20 resulting in Husker Properties' purchase of the McDowell Residence; McDowell deposited three checks issued to the Fund (endorsing two of the checks as "Trustee") into the RSP IOLTA account during this period worth $554,646.69 resulting in Husker Properties' purchase of the McDowell Residence. Fensler

and McDowell knew or should have known these deposits were for the purpose of purchasing the McDowell Residence.

121.    On November 8, 2016, Schwalb emailed Platt with Mount Rinderhorn's bank account number and routing information for a $95,000 wire transfer from the RSP IOLTA account to Mount Rinderhorn. The $95,000 wire transfer was an earnest deposit for Mount Rinderhorn's purchase of the McDowell Residence before selling it to Husker Properties.

122.    On November 8, 2016, Platt forwarded Schwalb's request to DeMunster of RSP's accounting department and asked her to "take care" of it.

123.    On November 9, 2016, Platt directed McDowell to call DeMunster regarding the transfer.

124.    On November 9, 2016, DeMunster issued a wire from the RSP IOLTA account to Mount Rinderhorn totaling $95,000 as an earnest deposit for Mount Rinderhorn's purchase of the McDowell Residence before selling it to Husker Properties.

125.    On November 22, 2016, Schwalb emailed Platt and DeMunster requesting a wire transfer totaling $1,030,000 to Mount Rinderhorn to finalize the purchase of the McDowell Residence from Heartland Bank.

126.    On November 23, 2016, DeMunster issued the wire from the RSP IOLTA account to Mount Rinderhorn totaling $1,030,000. Pursuant to RSP's policy and Platt's typical practice, this transfer out of the RSP IOLTA account to Mount Rinderhorn would not have occurred without Platt's approval.

127.    On November 28, 2016, Schwalb signed a promissory note on behalf of Mount Rinderhorn promising to pay $1,125,000 to the Fund for the purpose of Mount Rinderhorn extending a loan for the "purchaser of the McDowell Residence."

128.    Also on November 28, 2016, Schwalb signed a promissory note on behalf of Husker Properties promising to pay $1,125,000 to Mount Rinderhorn for the purpose of Husker Properties purchasing the McDowell Residence.

129.    Also on November 28, 2016, Husker Properties entered into a mortgage agreement with Mount Rinderhorn under which Mount Rinderhorn issued a secure loan for $1,125,000 to Husker Properties, collateralized by the McDowell Residence.

130.    As a result of Husker Properties' purchase of the McDowell Residence, Schwalb received, either directly or through his entities as identified below, a total of $164,712.50:

    a.    $55,015.63 to Mount Rinderhorn (a $22,500 origination fee; a $32,000 tax escrow reserve; and $515.63 in prepaid interest);

    b.    $47,500 in commissions to Schwalb Realty Group;

    c.    $59,346.87 for upgrades and maintenance to Husker Properties; and

    d.    $2,850 in Wilmette tax reimbursements directly to Schwalb.

131.    As a result of Husker Properties' purchase of the McDowell Residence, McDowell and his wife moved back into the McDowell Residence and lived there until approximately November 2, 2021.

132.    According to the Fund Trustees' practice of approving payments from the Fund and the requirements of the Fund's Trust Agreement, the $1,125,000 in Fund assets transferred from the RSP IOLTA account to Mount Rinderhorn should not have occurred unless Trustee Fernandez and Trustee Meyers both approved the transfers. Trustee Fernandez and Trustee Meyers failed to prevent these transactions from occurring and failed to take any action to reverse these transactions.

133. By the allegations described in paragraphs 117 through 120 above, McDowell dealt with assets of the Fund in his own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

134. By the allegations described in paragraphs 107 through 132 above, Trustee Fernandez, Trustee Meyers, Fensler, Platt, and McDowell:

      a.     failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

      b.     caused the Fund to engage in a transaction they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, McDowell and his wife Julie A. McDowell, parties in interest, of assets of the Fund in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

      c.     acted on behalf of McDowell and his wife Julie A. McDowell, parties whose interests are adverse to the interests of the Fund or the interests of its participants and beneficiaries in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

135. As a result of the foregoing breaches of duty described in paragraphs 133 and 134 above, Trustee Fernandez, Trustee Meyers, Fensler, Platt, and McDowell caused losses to the ERISA-covered employee benefit plans participating in the UEBF, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

136. As a result of the conduct described in paragraphs 110 through 114 and 121 through 131 above, Schwalb knowingly participated in the breaches of fiduciary duty described in paragraphs 133 through 134 above, is subject to such appropriate equitable relief to redress the

violations in which he knowingly participated, and is liable thereby pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

137.    As a result of the conduct described in paragraphs 85, 108 through 109, 112 through 116, 121 through 126, and 131 above, Platt knowingly participated in the breaches of fiduciary duty described in paragraphs 133 and 134 above, is subject to such appropriate equitable relief to redress the violations in which he knowingly participated, and is liable thereby pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

<div align="center">COUNT SEVEN<br>
<strong>Transferring $52,000 in Fund Assets to McDowell</strong></div>

138.    Paragraphs 1 through 39 and 85 above are incorporated herein by reference.

139.    According to UPC's consulting agreement, the Fund was required to pay UPC $25,000 per month, which was more than reasonable compensation. Under these terms the Fund would have been required to pay UPC a total of $200,000 through August 2017.

140.    As of August 21, 2017, the Fund had paid UPC a total of at least $138,500, and the Fund had paid Husker Properties $59,500 as rent on McDowell's behalf. Therefore, as of August 21, 2017, the Fund had paid a total of at least $198,000[2] to UPC and McDowell.

141.    On August 21, 2017, Platt informed DeMunster that McDowell would be requesting a check and that DeMunster was authorized to issue such a check.

142.    Later on August 21, 2017, McDowell directed RSP to issue a $52,000 check from the RSP IOLTA account to McDowell.

143.    A $52,000 check from the RSP IOLTA account was issued to McDowell on August 21, 2017.

---

[2] This amount does not include the $50,000 wire transfer from the RSP IOLTA to the Gurvey IOLTA on McDowell's behalf on January 13, 2017, *see supra* Count Four, or the $250,000 wire transfer from the RSP IOLTA to the Gurvey IOLTA on McDowell's behalf on January 25, 2017, *see supra* Count Five.

144. According to the Fund Trustees' practice of approving payments from the Fund and the requirements of the Fund's Trust Agreement, the $52,000 check from the RSP IOLTA account issued to McDowell should not have occurred unless Trustee Fernandez and Trustee Meyers both approved the check. Trustee Fernandez and Trustee Meyers failed to prevent this transaction from occurring and failed to take any action to reverse this transaction.

145. By the allegations described in paragraphs 138 through 143 above, McDowell:

a. failed to ensure all Fund assets were held in trust in violation of ERISA § 403(a), 29 U.S.C. § 1103(a);

b. failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

c. caused the Fund to engage in a transaction he knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, himself, a party in interest, of assets of the Fund in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

d. dealt with assets of the Fund in his own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

e. acted on behalf of himself, a party whose interests are adverse to the interests of the Fund or the interests of its participants and beneficiaries in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

146. By the allegations described in paragraphs 138 through 144 above, Trustee Fernandez and Trustee Meyers failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and

their beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

147.    As a result of the foregoing breaches of duty described in paragraph 145 above, McDowell caused losses to the ERISA-covered employee benefit plans participating in the UEBF, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

148.    Pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), Trustee Fernandez and Trustee Meyers are liable for the breaches of their co-fiduciary McDowell as described in paragraphs 138 through 143 above because they enabled their co-fiduciary McDowell to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1).

149.    As a result of the conduct described in paragraphs 85 and 141 through 143 above, Platt knowingly participated in the breaches of fiduciary duty described in paragraphs 145 and 146 above, is subject to such appropriate equitable relief to redress the violations in which he knowingly participated, and is liable thereby pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

<div align="center">

COUNT EIGHT
**Transferring $32,000 in Fund Assets to McDowell**

</div>

150.    Paragraphs 1 through 39 and 85 above are incorporated herein by reference.

151.    According to UPC's consulting agreement, the Fund would have been required to pay UPC a total of $250,000 through October 2017.

152.     As of October 17, 2017, the Fund had paid UPC a total of at least $171,500, and the Fund had paid Husker Properties $85,000 as rent on McDowell's behalf. Therefore, as of October 17, 2017, the Fund had paid a total of at least $256,500 to UPC[3] and McDowell.

153.     On October 16, 2017, McDowell asked Platt for assistance in obtaining $32,000 from the Fund relating to the McDowell Residence and McDowell's foreclosure attorney.

154.     On October 17, 2017, a $32,000 check was issued from the RSP IOLTA account to McDowell.

155.     According to the Fund Trustees' practice of approving payments from the Fund and the requirements of the Fund's Trust Agreement, the $32,000 check from the RSP IOLTA account issued to McDowell should not have occurred unless Trustee Fernandez and Trustee Meyers both approved the check. Trustee Fernandez and Trustee Meyers failed to prevent this transaction from occurring and failed to take any action to reverse this transaction.

156.     By the allegations described in paragraphs 150 through 154 above, McDowell:

a.     failed to ensure all Fund assets were held in trust in violation of ERISA § 403(a), 29 U.S.C. § 1103(a):

b.     failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

---

[3] This amount does not include the $50,000 wire transfer from the RSP IOLTA account to the Gurvey IOLTA account on McDowell's behalf on January 13, 2017, *see supra* Count Four, or the $250,000 wire transfer from the RSP IOLTA to the Gurvey IOLTA account on McDowell's behalf on January 25, 2017, *see supra* Count Five.

    c.    caused the Fund to engage in a transaction he knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Fund in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

    d.    dealt with assets of the Fund in his own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

    e.    acted on behalf of a party whose interests are adverse to the interests of the Fund or the interests of its participants and beneficiaries in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

157.    By the allegations described in paragraphs 150 through 155 above, Trustee Fernandez and Trustee Meyers failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

158.    As a result of the foregoing breaches of duty described in paragraph 156 above, McDowell caused losses to the ERISA-covered employee benefit plans participating in the UEBF, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

159.    Pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), Trustee Fernandez and Trustee Meyers are liable for the breaches of their co-fiduciary McDowell as described in paragraphs 150 through 154 above because they enabled their co-fiduciary McDowell to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1).

<u>COUNT NINE</u>
**Loaning $260,000 in Fund Assets to Trustee Meyers' Company[4]**

160.    Paragraphs 1 through 39 and 85 above are incorporated herein by reference.

161.    On December 19, 2017, Platt emailed Trustee Fernandez and Trustee Meyers stating David Schwalb proposed a $250,000 loan from the Fund to Mount Rinderhorn at simple interest with payment of the principal over five years. Platt requested an email vote of the Trustees to approve the loan because the offer was only good if the transaction was completed in 2017.

162.    In his email, Platt also stated the loan was not a party-in-interest transaction and he was obtaining an independent opinion from attorney Scott Mayer, who he identified as a Qualified Plan Asset Manager, would approve the transaction. Platt explained in his email that the RSP IOLTA account could be used and the loan itself involved "no real risk."

163.    In response to Platt's email, Trustee Meyers approved the loan, but Trustee Fernandez did not.

164.    On December 20, 2017, Schwalb confirmed Mount Rinderhorn received a $260,000 wire from RSP, although Trustee Fernandez had not yet approved the loan.

165.    On December 20, 2017, Schwalb signed a promissory note on behalf of Mount Rinderhorn promising to pay $260,000 to the Fund.

166.    The 2017 UEBF/Mount Rinderhorn Note was for a 5-year, interest-only loan at 5% fixed rate of interest. Interest was to be paid annually on December 31 of each year, with a balloon payment on December 21, 2022.

---

[4] The Fund has provided information that $260,000 in principal losses related to these violations has been restored to the Fund; the Secretary is in the process of verifying that information. In the event the principal losses have been restored to the Fund, the Secretary still seeks full lost opportunity costs for the period the Fund incurred these losses, as well as injunctive relief.

167.    On December 21, 2017, Trustee Meyers signed a promissory note on behalf of Gilman Opco, LLC ("Gilman Opco"), promising to pay $260,000 to Mount Rinderhorn.

168.    Gilman Opco is an Illinois corporation formed on or about March 22, 2013, with a principal place of business in Bannockburn, Illinois.

169.    Trustee Meyers and Schwalb each own approximately one-third of Gilman Opco through other companies. Trustee Meyers owns his share of Gilman Opco through Meyers Gilman Enterprises, LLC, an Illinois limited liability company; Schwalb owns his share of Gilman Opco through Husker Fuels Corp., an Illinois corporation.

170.    Illinois Secretary of State filings identify Trustee Meyers and Schwalb as managers of Gilman Opco.

171.    Platt, Trustee Meyers, and David Schwalb have known each other since at least 2013, when Platt represented Gilman Opco in a lawsuit. *See Gilman Opco and Gilman Landco LLC, v. Lanman Oil Co., Inc.*, No. 13–cv–7846, 2013 WL 5869607 (N.D. Ill., Nov. 1, 2013).

172.    The 2017 Mount Rinderhorn/Gilman Opco Note was for a 5-year, interest-only loan at a 5.4% fixed interest rate. Interest was payable annually on December 31, with a balloon payment on December 31, 2022.

173.    During a Trustee meeting held on January 18, 2018, Trustee Meyers "conditionally approved" the Fund loan to Mount Rinderhorn because Trustee Fernandez was not present.

174.    The January 18, 2018, Trustee meeting minutes state the loan "is a simple interest loan approved in a letter from independent counsel Scott Mayer as well as an opinion rendered by Fund Counsel [Platt], that it is to an independent party and not a party in interest or a related party for commercially acceptable interest rate for short term all in accordance with ERISA."

175. On February 28, 2018, Trustee Fernandez approved the $260,000 loan when he knew or should have known the loan was intended for Gilman Opco, which was partially owned by Trustee Meyers.

176. The proceeds of the $260,000 loan were electronically wired to Gilman Opco and were primarily for the benefit of Gilman Opco, not for the benefit of the Fund.

177. By the allegations described in paragraphs 160 through 176 above, Trustee Meyers dealt with assets of the Fund in his own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

178. By the allegations described in paragraphs 160 through 176 above, Trustee Fernandez, Trustee Meyers, and Platt acted on behalf of Trustee Meyers, a party whose interests are adverse to the interests of the Fund or the interests of its participants and beneficiaries in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

179. By the allegations described in paragraphs 160 through 176 above, Trustee Fernandez, Trustee Meyers, and Platt:

      a.     failed to ensure all Fund assets were held in trust in violation of ERISA § 403(a), 29 U.S.C. § 1103(a); and

      b.     failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

180. As a result of the foregoing breaches of duty described in paragraphs 177 through 179 above, Trustee Fernandez, Trustee Meyers, and Platt caused losses to the ERISA-covered

employee benefit plans participating in the UEBF, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

181.     As a result of the conduct described in paragraphs 161, 164 through 172, and 176 above, Schwalb knowingly participated in the breaches of fiduciary duty described in paragraphs 177 through 179 above, is subject to such appropriate equitable relief to redress the violations in which he knowingly participated, and is liable thereby pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

182.     As a result of the conduct described in paragraphs 85, 161 through 163, 171, 173 through 174, and 176 above, Platt knowingly participated in the breaches of fiduciary duty described in paragraphs 177 through 179 above, is subject to such appropriate equitable relief to redress the violations in which he knowingly participated, and is liable thereby pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

<u>COUNT TEN</u>
**Paying $77,000 in Fund Assets to McDowell for the Purpose of Starting a Health Plan**

183.     Paragraphs 1 through 39 and 85 above are incorporated herein by reference.

184.     On May 11, 2017, during a Trustee meeting, Trustee Fernandez and Trustee Meyers discussed the Fund sponsoring a health plan as a "means of bringing in money to the fund;" the Trustees tabled the discussion for a later date.

185.     The Trustee meeting minutes for the remainder of 2017 through 2018 do not include any further discussion of the health plan.

186.     McDowell provided "research services" consisting of reading the Affordable Care Act, contacting health insurance brokers to determine their interest in developing the health plan and the rates they would charge.

187. There was no contract or employment agreement covering the group health insurance plan "research services" McDowell provided.

188. The Fund paid McDowell $3,500 per month regardless of the number of hours of "research services" he performed.

189. Platt authorized the payment of UPC's additional research expenses from the RSP IOLTA on several occasions, and the payments of UPC's additional research expenses from the RSP IOLTA would not have occurred without Platt's approval.

190. From April 5, 2017, to August 23, 2018, Trustee Fernandez and Trustee Meyers authorized the Fund to pay McDowell at least $77,000 for these group health insurance plan "research services."

191. McDowell's group health insurance plan "research services" were settlor expenses for which the Fund should not have paid.

192. Upon information and belief, the Fund paid McDowell $3,500 more per month simply because McDowell was unable to afford his rent at the McDowell Residence after it was purchased by Husker Properties.

193. By the allegations described in paragraphs 183 through 192 above, Trustee Fernandez and Trustee Meyers:

       a.     failed to ensure all Fund assets were held in trust in violation of ERISA § 403(a), 29 U.S.C. § 1103(a);

       b.     failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

      c.     caused the Fund to engage in a transaction they knew or should have known constituted a direct or indirect furnishing of goods, services, or facilities between the Fund and McDowell, a party in interest in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C); and

      d.     caused the Fund to engage in a transaction they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of McDowell, a party in interest, of assets of the Fund in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

194.    As a result of the foregoing breaches of duty described in paragraph 193 above, Trustee Fernandez and Trustee Meyers caused losses to the ERISA-covered employee benefit plans participating in the UEBF, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

195.    As a result of the conduct described in paragraphs 85 and 189 above, Platt knowingly participated in the breaches of fiduciary duty described in paragraph 193 above, is subject to such appropriate equitable relief to redress the violations in which he knowingly participated, and is liable thereby pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

<div align="center">COUNT ELEVEN</div>
**<div align="center">Paying $895,000 in Fund Assets to McDowell in Unreasonable Compensation</div>**

196.    Paragraphs 1 through 39 above are incorporated herein by reference.

197.    On November 13, 2015, during a "Special Meeting" of the Trustees, McDowell, as Employer Trustee, and Trustee Fernandez determined McDowell would "serve as the Executive Director of the Fund to identify opportunities and cost cutting advantages to maximize opportunities going forward" because "the fund is not taking advantage of all of the opportunities

that might be available to it . . . [and] a more experienced and aggressive handling of the Trust Fund is needed."

198.     The November 13, 2015, "Special Meeting" minutes state, "[F]und counsel recommended a salary and compensation of $300,000 a year plus a signing bonus of $25,000 to be paid immediately upon hiring."

199.     Platt and Trustee Fernandez signed the "Special Meeting" minutes containing the hiring decision.

200.     McDowell issued himself the $25,000 bonus on November 13, 2015, and began receiving $25,000 per month in December 2015.

201.     The November 13, 2015, "Special Meeting" minutes also state the Fund's accountant and Platt agreed McDowell could be hired "so long as Herb McDowell resigns his position as Trustee once he becomes the Executive Director of the Fund and a new Trustee is brought in to replace him."

202.     As of the May 12, 2016, Trustee meeting, McDowell was still serving both as Employer Trustee and consultant to the Fund. The May 12, 2016, Trustee meeting minutes indicate Trustee Fernandez and McDowell, who was still an Employer Trustee, noted the need for a written employment agreement for McDowell, which had been "deferred until a new Trustee has been placed on the Board and Mr. McDowell has been replaced so that the new Trustee can review the terms of McDowell's hiring and approve it."

203.     The May 12, 2016, Trustee meeting minutes also indicate Trustee Fernandez and McDowell, who was still an Employer Trustee, discussed McDowell resigning his "Trustee position with the Fund to put some ERISA separation between him and the Fund." Platt was present at the meeting and signed the meeting minutes.

204. On October 27, 2016, during a Trustee meeting, the Trustees approved the resignation of McDowell as Trustee and the appointment of Gary Meyers as Employer Trustee. The minutes for the October 27, 2016, Trustee meeting were not signed by Trustee Fernandez and Gary Meyers until January 12, 2017.

205. On January 12, 2017, during a Trustee meeting approximately fourteen months after hiring McDowell as a consultant, Trustee Fernandez and Trustee Meyers entered into a Consulting Agreement with UPC, McDowell's entity, on behalf of the Fund effective as of November 14, 2016.

206. UPC had the following responsibilities under the Consulting Agreement: "United shall be responsible for reviewing the files of the Funds to look for opportunities to convert non-liquid assets into liquid assets for investment purposes to earn a rate of return in excess of what the Funds are getting currently. United will also examine its relationships with all vendors to look for better deals. In addition, United shall be responsible for sending a representative at the management level to be responsible for this account and that person shall attend and present report on United's activities at all Trust Fund Trustees' meetings."

207. UPC's consulting agreement with the Fund states UPC "recognizes that it is in a trusted position with respect to the Fund and that it may be considered a fiduciary."

208. During the period from November 1, 2015, through September 30, 2018, the Fund paid a total of at least $895,000 to McDowell, through UPC, as a Fund consultant, including $325,000 from November 13, 2015, to October 27, 2016, when McDowell was an Employer Trustee.

209. Upon information and belief, at no time did Trustee Fernandez take any actions to determine whether the Fund's arrangement was reasonable, whether UPC's services were

41

necessary for the operation of the Plan, or whether the Fund paid no more than reasonable compensation for UPC's services.

210.     Upon information and belief, at no time after Gary Meyers became an Employer Trustee on October 27, 2016, did Trustee Meyers take any actions to determine whether the Fund's arrangement was reasonable, whether UPC's services were necessary for the operation of the Plan, or whether the Fund paid no more than reasonable compensation for UPC's services.

211.     By the allegations described in paragraphs 196 through 208 above for the period from November 13, 2015, through at least October 27, 2016, McDowell dealt with assets of the Fund in his own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

212.     By the allegations described in paragraphs 196 through 210 above, Trustee Fernandez (for the period from November 13, 2015, through September 30, 2018), Trustee Meyers (for the period from at least October 27, 2016, through September 30, 2018), and McDowell (for the period from November 13, 2015, through at least October 27, 2016):

        a.      failed to ensure all Fund assets were held in trust in violation of ERISA § 403(a), 29 U.S.C. § 1103(a);

        b.      failed to act solely in the interest of the participants and beneficiaries of the Fund and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Fund administration in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

        c.      caused the Fund to engage in a transaction they knew or should have known constituted a direct or indirect furnishing of goods, services, or facilities between the Fund and McDowell/UPC, a party in interest in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 406(a)(1)(C);

d.      caused the Fund to engage in a transaction they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of McDowell/UPC, a party in interest, of assets of the Fund in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

e.      acted on behalf of a party whose interests are adverse to the interests of the Fund or the interests of its participants and beneficiaries in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

213.    As a result of the foregoing breaches of duty described in paragraphs 211 and 212 above, Trustee Fernandez, Trustee Meyers, and McDowell caused losses to the ERISA-covered employee benefit plans participating in the UEBF, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

<div align="center">COUNT TWELVE<br>

**Reporting and Disclosure Violations**</div>

214.    Paragraphs 1 through 39 above are incorporated herein by reference.

215.    The Summary Plan Description the Fund provided to the Department of Labor is dated November 2002.

216.    Upon information and belief, the Fund has not provided an updated Summary Plan Description to Fund participants since 2002, resulting in violations of ERISA §§ 101(a), 102(b), and 104(b), 29 U.S.C. § 1021(a), 1022(b), and 1024(b).

217.    Section 3.9 of the Fund's Trust Agreement states "the Trustees shall engage a certified public accountant" to audit the "Trust's records" as required by ERISA.

218.    The Fund has not included the required audited financial statement and independent auditor's report with its Form 5500 filing beginning in 2015.

219.    By the allegations described in paragraphs 217 through 218 above, Trustee Fernandez (for the period from August 14, 2012, through the present), Trustee Meyers (for the period from at least October 27, 2016, through the present), and McDowell (for the period from November 13, 2015, through at least October 27, 2016) failed to discharge their duties with respect to the Plan in accordance with the documents and instruments governing the Fund resulting in a violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

220.    ERISA § 103, 29 U.S.C. § 1023, requires ERISA plans to file annual Form 5500s with certain required information.

221.    The Fund failed to disclose on its 2016 Form 5500 that it retained Calibre CPA Group, PLLC ("Calibre Group") to perform the 2015 audit and paid Calibre Group $25,000.

222.    The Fund failed to disclose any of the compensation it paid UPC on its 2015, 2016, and 2017 Forms 5500.

223.    The Fund failed to disclose the $122,000 salary it paid to Fensler in 2018 on its 2018 Form 5500, Schedule C.

224.    The Fund inaccurately disclosed its administrative expenses on its 2018 Form 5500, as Schedule C identified $1,013,654 in administrative expenses and Schedule H identified $1,167,546 in administrative expenses without an explanation of why these numbers do not match.

225.    By the allegations in paragraphs 221 through 224 above, the Fund violated ERISA § 103, 29 U.S.C. § 1023.

226.    As of January 4, 2021, the Fund has never filed a "Form M-1 Report for Multiple Employer Welfare Arrangements (MEWAs) and Certain Entities Claiming Exception (ECEs)",

which is required to be filed by MEWAs, resulting in violations of ERISA § 101(g), 29 U.S.C. § 1021(g).

## REQUEST FOR RELIEF

**WHEREFORE**, the Secretary requests this Court enter a judgment:

1.      Permanently removing Defendants John Fernandez, David Fensler, Gary Meyers, Herbert O. McDowell III, L. Steven Platt, and United Preferred Companies, Ltd. and any corporate entities through which they may act as fiduciaries, service providers, trustees, and administrators of the Participating Plans or the Fund;

2.      Permanently enjoining Defendants John Fernandez, David Fensler, Gary Meyers, Herbert O. McDowell III, L. Steven Platt, David Schwalb, and United Preferred Companies, Ltd. and any corporate entities through which they may act from acting as a fiduciary, service provider, trustee, or administrator to the Participating Plans or the Fund;

3.      Requiring Defendants John Fernandez, David Fensler, Gary Meyers, Herbert O. McDowell III, L. Steven Platt, David Schwalb, Robbins, Salomon & Patt, Ltd., Robbins DiMonte, Ltd., and United Preferred Companies, Ltd. and any corporate entities through which they acted to restore all losses they caused to the Participating Plans or all losses for which they are liable;

4.      Appointing an Independent Fiduciary with full and exclusive fiduciary authority over the administration and management of the Fund and Participating Plans, and full and exclusive control over the Fund and Participating Plans' assets, including but not limited to:

      a.      Authority to exercise all fiduciary responsibilities relating to the Fund and Participating Plans;

b. Authority to take exclusive control of all plan assets of the Fund and the Participating Plans;

c. Authority given to Trustees under the terms of the documents governing the Fund and Participating Plans;

d. Authority to amend the documents governing the Fund;

e. Exclusive authority to appoint, replace and remove such administrators, trustees, attorneys, employees, assigns, agents, and service providers as the Independent Fiduciary shall, in the Independent Fiduciary's sole discretion, determine are necessary to aid the Independent Fiduciary in the exercise of the Independent Fiduciary's powers, duties, and responsibilities to the Fund and Participating Plans;

f. Authority to conduct an accounting and marshaling of all plan assets of the Fund and Participating Plans; and

g. Authority to terminate the Fund and Participating Plans and distribute assets, if in the best interest of the Fund and Participating Plans.

5. Requiring Defendants John Fernandez, David Fensler, Gary Meyers, Herbert O. McDowell III, L. Steven Platt, and United Preferred Companies, Ltd. to jointly and severally reimburse the fees and expenses of the Independent Fiduciary to the Fund and Participating Plans;

6. Requiring Defendants John Fernandez, David Fensler, Gary Meyers, Herbert O. McDowell III, L. Steven Platt, and United Preferred Companies, Ltd. to reverse the prohibited transactions and to disgorge to the Fund all profits and fees and other monies earned in connection with their violations;

7.      Requiring RSP and Robbins DiMonte to disgorge to the Fund all profits and fees and other monies earned in connection with L. Steven Platt's violations;

8.      Requiring Defendants L. Steven Platt and David Schwalb to disgorge to the Fund all profits and fees and other monies earned as a result of their knowing participation in the violations described herein;

9.      Permanently enjoining Defendants John Fernandez, David Fensler, Gary Meyers, Herbert O. McDowell III, L. Steven Platt, and United Preferred Companies, Ltd. and any corporate entities through which they may act from ever acting as a fiduciary or service provider to any plan covered by Title I of ERISA and from marketing or enrolling any employers, professional employer organizations, or participants in any ERISA or non-ERISA covered employee welfare benefit plan or any plan purporting to provide any type of medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment;

10.     Awarding the Secretary the costs of this action; and

11.     Granting such other relief as may be equitable, just, and proper.


**SEEMA NANDA**
Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor

/s/Kevin M. Wilemon
**KEVIN M. WILEMON**
Senior Trial Attorney

Attorneys for **MARTIN J. WALSH**
Secretary of Labor
U.S. Department of Labor
Plaintiff

Office of the Solicitor
U.S. Department of Labor
230 S. Dearborn St., Room 844
Chicago, IL 60604
Telephone No.: 312/353-6973
Fax No.: 312/353-5698
E-mail: wilemon.kevin@dol.gov