```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION


Martin J. Walsh, Secretary    )
of Labor, United States       )
Department of Labor           )
                              )
               Plaintiff,     )
                              )
                              )
                              )
       v.                     )    No. 22 C 1030
                              )
David Fensler, John           )
Fernandez, Gary Meyers, L.    )
Stephen Platt, Herbert O.     )
McDowell, III, David          )
Schwalb, Robbins, Salomon &   )
Platt, Ltd., Robbins          )
Dimonte, Ltd., United         )
Preferred Companies, Ltd.,    )
and United Employee Benefit   )
Fund Trust,                   )
                              )
               Defendants.    )
```

Memorandum Opinion and Order

Plaintiff Martin J. Walsh, in his capacity as Secretary of Labor of the United States Department of Labor, filed this action for injunctive and equitable relief under ERISA, asserting that defendants breached their fiduciary duties, or participated in fiduciary breaches, by using Fund assets of the United Employee Benefit Fund Trust (the "Fund") in prohibited transactions,

1

causing losses to the Fund.[1] In three separate motions, five defendants have moved to dismiss the complaint. Meanwhile, the Secretary has moved to strike the affirmative defenses of two of the non-moving defendants. For the reasons that follow, the motions to dismiss are denied, and the motion to strike is granted.

I.

The complaint alleges that John Fernandez, David Fensler, Gary Meyers, and Herbert O. McDowell III were trustees or managers of the Fund, which operated as a non-ERISA covered multiple employer welfare arrangement ("MEWA") to provide life insurance benefits to at least sixty-three ERISA-covered plans (the "Participating Plans"). These defendants, the Secretary alleges, were fiduciaries of the Fund and the Participating Plans and were "parties in interest" as defined by ERISA § 3(14). Defendant United Preferred Companies, Ltd., ("UPC") is an entity wholly owned by McDowell and allegedly McDowell's alter ego with respect to transactions described in the complaint.

Defendant L. Steven Platt served as the Fund's Counsel. The Secretary alleges that at times, Platt exercised authority and control respecting the management or disposition of the assets of the Participating Plans and exercised discretionary authority or

---

[1] The Secretary names the Fund as a defendant pursuant to Federal Rule of Civil Procedure 19(a) to ensure that complete relief can be granted.

2

discretionary control over the management of the Participating Plans covered by the Fund. In particular, Platt allegedly designed and orchestrated certain of the prohibited transactions described in the complaint. Accordingly, Platt, too, allegedly owed a fiduciary duty to the Fund and the Participating Plans and was a party in interest under ERISA. Defendant Robbins, Salomon & Platt, Ltd. ("RSP") is the law firm that employed Platt at times relevant to the Secretary's claims, and defendant Robbins Dimonte, Ltd., is allegedly RSP's successor in interest.

Defendant David Schwalb is a real estate attorney who allegedly participated in transactions with the Fund through two entities he owns and manages, Mount Rinderhorn Capital, LLC, and Husker Properties, LLC. According to the complaint, Schwalb worked with Platt and other fiduciary defendants to carry out a series of transactions in which Fund assets were used to: 1) finance the purchase of defendant McDowell's home (from which McDowell and his wife had previously been evicted) for the McDowells' benefit; and 2) lend money to a company in which defendant Meyers holds a one-third interest, and of which Schwalb himself is also a one-third beneficial owner. The Secretary does not claim that Schwalb was a fiduciary of the Fund or the Participating Plans, but he asserts that Schwalb violated ERISA by knowingly participating in his co-defendants' fiduciary breaches.

3

The Secretary organizes his complaint into twelve counts, eleven of which describe transactions in which one or more of the fiduciary defendants allegedly failed to ensure that all Fund assets were held in trust; failed to act in the sole interest of the Fund; caused the Fund to engage in prohibited transactions with a party in interest; acted on behalf of parties whose interests were adverse to the funds; and/or knowingly participated in breaches of fiduciary duties. Based on these acts and omissions, the Secretary alleges violations of ERISA §§ 403(a), 404(a)(1), 406(a)(1), 406(b)(1) and (2), and 502(a). A summary of the transactions underlying each count follows:

- Count One, captioned, "Paying $44,440.42 in Fund Assets to McDowell's Son Because of a Dispute with a Third Party about Life Insurance Commissions" describes a transaction in which Fund assets were used to pay an entity controlled by McDowell's son $44,440.20 in "reimbursements" to McDowell that McDowell claimed he was owed in connection with the settlement of a dispute over commissions for life insurance policies relating to the Fund.

- Count Two, captioned, "Loaning $5,000 to McDowell While He Was a Fund Trustee," describes a transaction in which the fiduciary defendants approved a "loan" of Fund assets to McDowell that they failed to ensure was repaid, and that was not in fact repaid.

4

- Count Three, captioned, "Transferring $100,000 in Fund Assets to McDowell's Foreclosure Attorney," describes the fiduciary defendants' approval of and/or failure to object to the transfer of Fund assets to pay an attorney who never provided services to the Fund for services the attorney rendered to McDowell personally.

- Count Four, captioned, "Transferring $50,000 in Fund Assets to McDowell's Foreclosure Attorney," describes the movement of Fund assets across several accounts controlled by defendants that were ultimately used to release a lien on McDowell's personal property.

- Count Five, captioned, "Transferring $250,000 in Fund Assets to McDowell's Foreclosure Attorney," describes transactions similar to those in the preceding count and the use of Fund assets to benefit McDowell personally.

- Count Six, captioned, "Transferring $1.125 Million in Fund Assets to Purchase McDowell's Personal Residence Out of Foreclosure," describes how defendants approved and/or failed to object to transactions involving Fund assets and various entities controlled by defendants, some of which were newly created specifically for this purpose, to purchase McDowell's residence for McDowell's benefit.

- Counts Seven and Eight, captioned, "Transferring $52,000 in Fund Assets to McDowell," and "Transferring $32,000 in Fund Assets to McDowell," respectively, describe the use of Fund assets, with the approval of and/or without any objection by the fiduciary defendants, to pay McDowell and UPC (allegedly McDowell's alter ego) unreasonable and unearned amounts for McDowell's "consulting" services.

- Count Nine, captioned, "Loaning $260,000 in Fund Assets to Trustee Meyers' Company," describes a loan of Fund assets to a company managed and beneficially owned by defendants Meyers and Schwalb, which the fiduciary defendants either approved or failed to oppose.

- Count Ten, captioned, "Paying $77,000 in Fund Assets to McDowell for the Purpose of Starting a Health Plan," describes the use of Fund assets to pay excessive and unjustified amounts to McDowell and UPC for "research services" McDowell provided concerning the possibility that the Fund would sponsor of a health plan.

- Count Eleven, captioned, "Paying $895,000 in Fund Assets to McDowell in Unreasonable Compensation," describes periods of time during which McDowell was a fiduciary of the Fund and was also paid with Fund assets for "consulting" services that no fiduciary defendant ever evaluated for reasonableness.

- Count twelve asserts violations of ERISA's reporting and disclosure requirements.

## II.

### A. Motions to Dismiss

Three motions to dismiss are pending. The broadest is the motion filed by defendants Fernandez, Meyers, and the Fund, which argues primarily that I lack subject matter jurisdiction over the case and, secondarily, that the Secretary fails to state an actionable ERISA claim.

Where, as here, a defendant raises "a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—'the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff.'" Int'l Ass'n of Heat & Frost Insulators Loc. 17 Pension Fund v. CEC Env't, Inc., 530 F. Supp. 3d 757, 760 (N.D. Ill. 2021) (quoting *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)) (emphasis in original). Defendants' jurisdictional challenge has three prongs, none of which supports dismissal. The first prong asserts that the Secretary "alleges that the MEWA was established pursuant to a collective bargaining agreement," and that under ERISA, "MEWAs do not include employee welfare benefit plans established or maintained under a collective bargaining agreement." Mot., ECF 41 at 6. But this argument ignores the

7

language of the complaint, which asserts that the Fund "*holds itself out* as a voluntary employees' beneficiary association ("VEBA") trust *under a collectively bargained, multi-employer plan*" but goes on to allege that the Fund "actually operates as a non-ERISA covered MEWA" comprising "Participating Plans...each of which is covered by ERISA." Compl. at ¶¶ 12-13 (emphasis added). Moreover, as the Secretary observes, the regulation defendants cite for their sweeping description of what is excluded from ERISA's definition of a MEWA is actually far more nuanced. The provisions of 9 C.F.R. § 2510.3-40(b)(1)-(3) set forth three specific criteria the Secretary considers in determining whether a plan is excluded from MEWA status on the basis that it was established or maintained pursuant to a collective bargaining agreement. Yet defendants make no attempt to show—nor is it obvious from the face of the complaint—that the Fund satisfies these criteria.[2] Most importantly, however, defendants' argument fails to confront the Secretary's jurisdictional theory, which is that regardless of whether the Fund is an ERISA-covered MEWA, the

---

[2] Defendants attempt to flesh out their argument in their reply, but arguments raised for the first time in reply are forfeited. *Urlaub v. CITGO Petroleum Corp.*, No. 21 C 4133, 2022 WL 523129, at *7 (N.D. Ill. Feb. 22, 2022) (declining to consider argument the defendants "did not bring up until the reply brief"), citing *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019) ("[A]rguments raised for the first time in a reply brief are waived.").

Secretary "has enforcement authority over the operations of the Fund because it offers benefits in connection with" the ERISA-covered Participating Plans. Resp., ECF 65 at 11. In short, the complaint's references to collective bargaining agreements do not undermine the Secretary's assertion of jurisdiction pursuant to ERISA § 502(e)(1), which provides that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary." 29 U.S.C. § 1132(e)(1).

The second prong of defendants' argument is that ERISA does not preempt state law regulation of MEWAs, which are subject to concurrent state and federal jurisdiction. This argument misses the mark because even assuming that it correctly characterizes the law, the fact that the state may *also* have something to say about the conduct the Secretary alleges does not mean that I lack jurisdiction to resolve the claims he brings under ERISA—a federal statute.

The only conceptually adequate prong of defendants' argument is the third, which contends that the Secretary has not sufficiently alleged that the Participated Plans fall within ERISA's scope. But this argument fails on the merits, as the Secretary's allegations are more than sufficient to plead that ERISA governs the Participating Plans. ERISA's definition of an "employee welfare benefit plan" incorporates five elements:

9

> (1) a plan, fund or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits, (5) to participants or their beneficiaries.

*Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*, 805 F.2d 732, 738 (7th Cir. 1986). These elements are adequately alleged in the Secretary's description of how the Participating Plans were created; the relationship between the Fund and the Participating Plans; and the contents of the Fund's Trust Agreement and other plan documents, *see* Compl. at ¶¶ 14-16, 19-21. And the Secretary's description is supported by documents referenced in the complaint, which defendants attach to their motion. *See* Romak Decl., ECF 41-1 Exh. A-D (Subscription Agreement, Trust Agreement, Summary of Plan Benefits, and Collective Bargaining Agreement) (sealed). Accordingly, defendants' insistence that the Secretary has not alleged a factual basis to support subject matter jurisdiction is unpersuasive.

Having determined that my jurisdiction is secure, I need not linger on these defendants' request for dismissal under Fed. R. Civ. P. 12(b)(6), since their argument in this connection is wholly derivative of their jurisdictional argument. In ruling this aspect of defendants' motion, I accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in

10

the Secretary's favor. *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2019). To survive the motion, the Secretary must allege facts that reasonably suggest that defendants is liable for the misconduct alleged, rendering the claims against them "plausible on [their] face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an ERISA claim for fiduciary breach, a plaintiff must plausibly allege "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). Defendants do not address any of these elements, however, but merely insist that "because none of the plans are ERISA plans, the department fails to state a claim for breach of fiduciary duty under ERISA." Mot., ECF 41 at 12. This contention adds nothing to the arguments I rejected above. Accordingly, their motion is denied in its entirety.

Next up is defendant Platt's motion to dismiss or for a more definite statement. Platt argues that the Secretary has not adequately pled a basis for his liability either as a fiduciary or as a knowing participant in fiduciary breaches. His request for a more definite statement concerns the losses to the Fund the Secretary claims resulted from Platt's alleged misconduct.

Platt argues that his role in the allegedly prohibited transactions was to provide legal advice as the Fund's attorney, and that carrying out his professional duties in that capacity did not make him a fiduciary either of Fund or of the Participating Plans. He cites, *inter alia*, *Assocs. In Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 570 (7th Cir. 1991), for the proposition that "lawyers, accountants, and actuaries may render services to employers, plan trustees, and plan beneficiaries does not give them any decision-making authority over the plan or plan assets; the power to act for the plan is essential to status as a fiduciary under ERISA.". *See also Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991) ("professionals like accountants or attorneys" do not fit within ERISA's definition of a fiduciary "when all they have done is advise the trustees of an ERISA plan."). What distinguishes the Secretary's allegations from those in these cases, however, is that Platt allegedly did more than merely advise the Trustees concerning the management and disposition of Fund assets. The Secretary alleges, for example, in addition to recommending and designing the structure of the transactions described in Counts Six for the purchase of McDowell's home, Platt channeled Fund assets through an IOLTA account he established at RSP especially for this purpose, and over which he exercised control. According to the complaint, the movement of Fund assets out of the IOLTA

12

account—which allegedly occurred as part of several of the transactions the Secretary challenges—required Platt's authorization. *See* Compl. at ¶¶ 85, 89, 115.[3] *See also id*. at 189. Given the Seventh Circuit's "liberal standard for fiduciary status," *Baker v. Kingsley*, 387 F.3d 649, 663 (7th Cir. 2004), as well as the fact-intensive nature of the inquiry, *Patten v. N. Tr. Co.*, 703 F. Supp. 2d 799, 808-09 (N.D. Ill. 2010), I conclude that these allegations are sufficient to support the Secretary's claim that Platt functioned as a fiduciary.

With respect to the Secretary's claims against Platt for knowing participation in fiduciary breaches, Platt argues that he cannot be held liable under this theory because he was not alleged to have personally profited from the fiduciary breaches or to have received any "ill-gotten gains." Platt cites *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), as support for this argument, but *Harris Trust*—which holds that the Secretary can bring a civil action for appropriate equitable relief under ERISA § 502(a)(5) against a non-fiduciary party in interest who knowingly participates in a fiduciary's violation of

---

[3] Platt argues that he did not have actual control over the funds in the IOLTA account, citing Rule 1.15(d) of the Illinois Rules of Professional Conduct (requiring attorneys "promptly to deliver to the client or third person any funds or other property that the client or third person is entitled to receive..."). But the existence of this rule does not foreclose the possibility that Platt exercised actual control over Fund assets held in the account.

13

ERISA—does not make personal receipt of ill-gotten gains an element of the Secretary's claim. *See Daniels v. Bursey*, 313 F. Supp. 2d 790, 808 (N.D. Ill. 2004) ("Under Harris a claim under § 502(a)(3) against a non-fiduciary essentially asserts that the non-fiduciary aided and abetted the fiduciary's breach."); *Godfrey v. GreatBanc Tr. Co.*, No. 18 C 7918, 2020 WL 4815906, at *11 (N.D. Ill. Aug. 19, 2020) (identifying the elements of knowing participation claim under ERISA as a breach of fiduciary duty plus "knowing conduct by the defendant and participation or facilitation of the fiduciary breach."). At most, *Harris* suggests a potential limitation on the Secretary's ability to recover from Platt, *see* 530 U.S. at 250 (outlining common law limitations on "appropriate equitable relief"), but those limitations do not justify dismissal of the Secretary's claim.

    Finally, Platt alleges that a more definite statement of the Secretary's claims is required because the complaint indicates that certain losses the Fund suffered have been restored. As the Secretary explains, however, the information he obtained in this connection after an investigation by the Employee Benefits Security Administration is incomplete. Moreover, the information Platt claims to need to answer the Secretary's claims adequately is presumably in the Trustee's and/or defendant Schwalb's control—not the Secretary's. For these reasons, it is discovery—not repleading—that is appropriate to fill any gaps in the Secretary's

14

case against Platt. For the foregoing reasons, Platt's motion is likewise denied in its entirety.

Defendant Schwalb's motion adopts the fiduciary defendants' jurisdictional arguments and argues further that the claims against him as a knowing participant in the fiduciary defendants' breaches should be dismissed as inadequately pled. There is no need to revisit my conclusion on the jurisdictional issue. As for the remainder of Schwalb's motion, I deny it for the following reasons.

The thrust of Schwalb's argument is that there was nothing untoward about the conduct attributed to him, or, more generally, to the series of transactions defendants designed to enable McDowell to return to the home from which he had been evicted in foreclosure. As Schwab simplistically characterizes these transactions, "[t]he Fund lent money to a disinterested party (i.e., Schwalb) who then allowed McDowell to live there," thus enabling the Trustees "to legally work around a proscription" against engaging in prohibited transactions with a "party in interest." Mot., ECF 44 at 6. The primary flaw in this argument is that Schwalb's description of himself as a "disinterested third party" who participated in arms-length transactions with the Fund is at odds with the Secretary's allegations. *See*, e.g., Compl. at ¶¶ 111-114, 169-171 (describing Schwalb's previous relationship and dealings with Meyers and Platt).

15

Schwalb next argues that he cannot be held liable on a theory of knowing participation because the complaint fails to allege that Schwalb knew the transactions in which he participated were prohibited under ERISA. I am satisfied, however, that the facts alleged in the complaint adequately plead that Schwalb "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust*, 530 U.S. at 251. Indeed, the complaint describes transactions culminating in the purchase of McDowell's home with Fund assets channeled through the RSP IOLTA account and then to Schwalb's companies Mount Rinderhorn and Husker Properties, followed by Schwalb's execution of promissory notes on behalf of these companies for a loan and mortgage collateralized by McDowell's home (in which McDowell and his wife lived), and Schwalb's subsequent receipt of "rent" payments from the Fund on McDowell's behalf. *See* Compl. ¶¶ 108-129; 140, 152. In transactions described in another count, Schwalb's company received a loan from the Fund (through the RSP IOLTA account), then immediately lent the loan proceeds to a company partially owned by Trustee Meyers (and partially by Schwalb himself). *See* Compl. at ¶¶ 161, 164-172, 176. These allegations raise a reasonable inference that Schwalb knew the circumstances that rendered the transactions he facilitated (and profited from) prohibited uses of Fund assets by a parties in interest.

16

Schwalb's final arguments are that: 1) he cannot be held liable for knowing participation in fiduciary breaches under ERISA § 404(a)—as opposed to knowing participation in prohibited transactions under ERISA § 406; and 2) that the Secretary's fails to allege that the Fund suffered losses as a result of Schwalb's conduct. The first argument is at odds with the Seventh Circuit's observation in *Halperin v. Richards*, 7 F.4th 534, 553 n. 3 (7th Cir. 2021), that the reasoning of *Harris Trust* "would seem to extend equally to a § 404 fiduciary claim." *See also Daniels*, 313 F. Supp. 2d at 807-08 (extending *Harris*'s logic to a claim alleging participation in a breach of fiduciary duty). The second argument ignores the complaint's allegations concerning the Fund's losses. *See* Compl. ¶¶ 124, 126, 135, 164, 176, 180; p. 23 n.1, p. 34, n.4. For all of the foregoing reasons, Schwalb's motion is denied.

## B. Motion to Strike

I now turn to the Secretary's motion to strike the three affirmative defenses raised by defendants RSP, and Robbins DiMonte, Ltd., which assert: 1) the Illinois statute of repose; 2) state or federal statutes of limitations; and 3) superseding or intervening cause. While it is true that motions to strike are disfavored when they serve to delay proceedings, affirmative defenses are appropriately stricken to remove clutter "when they are insufficient on the face of the pleadings." *Heller Fin., Inc.*

17

*v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). I agree with the Secretary that that is the case here.

The first and second affirmative defenses assert that the Secretary's action is barred by 735 ILCS 5/13-214.3 (c) and (b), which provide, respectively, that actions against an attorney arising out of the performance of professional services "must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought," and "may not be commenced in any event more than 6 years after the date on which the act or omission occurred." 735 Ill. Comp. Stat. Ann. 5/13-214.3. Defendants assert that these provisions, and, alternatively, the federal statutory limitation codified at 29 U.S.C. § 1113, bar "[a]ll causes of action against Defendants occurring prior to May 25, 2015." Ans., ECF 53 at 51. The Secretary argues that defendants waived these defenses through successive tolling agreements, and that even if the defenses are not waived, the state statutory provisions do not apply to the claims he asserts under ERISA claims in federal court. But I need not examine these arguments closely because, as the Secretary further observes, the earliest conduct the complaint attributes to Platt (whose conduct is the basis for these defendants' liability) occurred on August 7, 2015. Accordingly, the allegations supporting these affirmative defenses confirm that the Secretary's

18

claims against these defendants accrued within the limitations periods they cite.[4]

Finally, these defendants assert the existence of a "superseding or intervening cause" as an affirmative defense to the Secretary's claims. I agree with the Secretary, however, that this defense is not properly pled as an affirmative defense. While the Seventh Circuit has indeed observed that "[i]n technical legal terms the burden of proving an 'intervening cause'—something which snaps the 'causal chain' (that is, operates as a 'superseding cause,' wiping out the defendant's liability...—is on the defendant," *BCS Servs., Inc. v. Heartwood 88*, LLC, 637 F.3d 750, 757 (7th Cir. 2011), that does not transform the issue into an

---

[4] I note for the sake of completion, however, that the tolling agreements the parties attach to their submissions do, indeed, support the Secretary's argument that defendants explicitly waived these affirmative defenses. The "Fourth Extension of the Tolling Agreement" defines "limitations periods" to include both specific limitations periods established by ERISA as well as "any other defenses based on the passage of time (including but not limited to laches, waiver, and estoppel) applicable to the Secretary's claims," and states that all such limitations periods "shall be tolled as of May 25, 2021, and shall remain tolled through and including March 1, 2022...with respect to any judicial or administrative proceeding brought by the Secretary under Title I of ERISA and involving the Claims." ECF 70-1 at 2. RSP and Robbins DiMonte's response to the Secretary's motion, which refers to their first and second affirmative defenses as "tolling defenses," appears to misunderstand how the parties' tolling agreements bear on the various limitations periods they assert. At all events, nothing in their argument offers any factual basis for concluding that Secretary's claims are untimely under any interpretation of the statutes they cite, regardless of the impact of the tolling agreements.

19

affirmative defense. Rather, as the *BCS Services* court went on to explain, it means that plaintiffs need not prove "a series of negatives," to establish causation, i.e., they need not "positively exclude every other possible cause." *Id.* (citation and alteration removed). To the extent these defendants contend that superseding or intervening causes, rather than Platt's conduct, proximately caused the losses to the Fund the Secretary identifies, they are free to present evidence and argument in that connection.

### III.

For the foregoing reasons, each of the pending motions to dismiss is denied, and the Secretary's motion to strike is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 8, 2022